**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS N. MASTERS,** | : | **CIVIL NO. 1:CV-03-0748** |
|     **Plaintiff,** | : | |
| | : | **(Judge Kane)** |
|     v. | : | |
| | : | |
| **OFFICER WALTER BRITTON,** | : | |
| **ET AL.,** | : | |
|     **Defendants** | : | |

**MEMORANDUM AND ORDER**

Presently before the Court is Defendants' joint motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. (Doc. 63). Defendants timely submitted a memorandum of law in support of the motion. (Doc. 64). Plaintiff filed a memorandum of law in opposition. (Doc. 66). A reply brief was then filed by Defendants. (Doc. 67). The motion is ripe for disposition. For the reasons set forth below, the motion will be granted in part and denied in part.

I. Background.

This civil rights action was commenced on behalf of Plaintiff by attorney Eric Yurkovich in May 2003. Plaintiff alleges that his rights were violated while incarcerated at the State Correctional Institutions at Pittsburgh and Camp Hill. The complaint was amended in March 2004. Following the disposition of a Rule 12 motion, a scheduling order was issued setting pretrial deadlines. Within two months of the entry of the scheduling order, a motion to compel answers to interrogatories and responses to a request for production of documents was filed by counsel for Defendants Lasky and Young. Defendant Noel also filed a motion to compel answers to interrogatories and responses to a request for production of documents. Subsequent to the motion filed on behalf of Lasky and Young, but prior to Noel's motion, Plaintiff's counsel, Eric Yurkovich, moved to withdraw his appearance. His request was granted and new counsel, Mr. Russell, entered his appearance. The motion to compel filed on behalf

of Lasky and Young was granted as unopposed and counsel was instructed to provide Defendants with the requested documents and information. Noel's motion was denied without prejudice. While Defendants concede that Plaintiff provided answers to the interrogatories and requests for production of documents, they challenge the veracity of the answers provided in response to a number of interrogatories, and indicate that Plaintiff has commenced two other lawsuits complaining of the same injuries of which he complains in this matter.

Specifically, Plaintiff revealed that he commenced other litigation as a result of a fall at the Allegheny County Jail ("Jail litigation"). In that litigation, Plaintiff claimed that as a result of a fall on July 7, 2000, almost a year before the fall that occurred in the instant lawsuit, he sustained severe injuries to his head, knee and back resulting in chronic pain, hearing loss and partial loss of vision. Notably, he alleges in this litigation that his fall at SCI-Pittsburgh was due to the injuries he sustained in his first fall at the Allegheny County Jail.

Plaintiff, however, neglected to reveal that he was involved in other litigation that was filed prior to this matter. Plaintiff allegedly fell in an elevator located in the Monroeville Mall ("Elevator litigation") shortly after he was released from SCI Camp Hill and he filed a lawsuit seeking compensation for a variety of injuries, including chronic back pain, loss of vision and loss of hearing. Plaintiff testified, under oath, in the elevator litigation that prior to the fall, he was in good health and that he was lifting weights the night before the fall. Notably, this was several months after his fall at SCI Pittsburgh and shortly after he was allegedly assaulted in SCI Camp Hill. Additionally, Plaintiff testified in the elevator litigation that since the fall, he was required to use a four-pronged cane or walker due to several other falls caused by vertigo. However, surprisingly, in response to an interrogatory propounded upon Plaintiff in the present litigation, he represented that he had not been involved in any

other fall, incident or accident in the last ten years.

Defendants also represent that "[b]ased upon the inconsistent and often conflicting information revealed in these three lawsuits, as well as a wealth of other information which defendants have gathered, defendants have reason to believe that Plaintiff has concealed significant information and provided false or misleading information about a number of other matters as well." (Doc. 63-1, p. 6). Defendants further state that "[i]n order to confirm these suspicions and fully prepare for their defense, defendants have been attempting to take the [Plaintiff's] deposition for a number of months." (Id.)

Plaintiff's first deposition was scheduled for February 15, 2005. However, upon notification from Mr. Russell that he was considering withdrawing from the case, the deposition was postponed. The deposition, which was subsequently scheduled for March 3, 2005, took place as planned since Russell did not file a motion to withdraw. After several hours, Plaintiff was unable to continue with the deposition due to his medical condition. The deposition was therefore continued until March 17, 2005. Both Plaintiff and his counsel appeared on March 17, 2005, but Plaintiff refused to go forward because his attorney had filed a motion to withdraw that had not yet been ruled upon by the court. The motion to withdraw was subsequently denied. The deposition was rescheduled to May 19, 2005 and May 20, 2005. On May 16, 2005, Plaintiff's counsel confirmed that the deposition was going forward. At 8:00 p.m. on May 18, 2005, an individual, who identified himself as Plaintiff's son, left a message on the answering machine of defense counsel's firm indicating that Plaintiff had just received notice of the deposition and would not be attending the deposition. Plaintiff failed to appear for the May 19, 2005 deposition.

Due to Plaintiff's failure to cooperate in the prosecution of the litigation, it has also become necessary for the court to become involved in the discovery process. Initially, a conference was

3

scheduled to discuss the difficulties defendants were having in conducting discovery and in completing Plaintiff's deposition. Plaintiff failed to appear at his attorney's office, and his attorney was unable to contact him prior to the conference to discuss the matter. The case was therefore unable to proceed. An order was issued scheduling a conference "to further discuss the Plaintiff's failure to cooperate with discovery and participate in the prosecution of the litigation." (Doc. 61). Plaintiff's participation in the conference was made mandatory. Plaintiff was present at his attorney's office at the assigned time, and the conference went forward. Plaintiff was admonished by the court for his behavior and was advised that his failure to cooperate in the litigation would result in dismissal of the action. It was agreed that due to the Plaintiff's conduct, a motion for sanctions would be entertained by the Court. Defendants filed their motion for sanctions, but Plaintiff failed to file an opposition brief. The court ordered an opposition brief to be filed, or suffer dismissal of the action. An opposition brief was then filed.

Defendants also detail the difficulties they faced in securing authorization for medical records. Counsel for Lasky and Young sent four separate letters requesting that Plaintiff execute authorizations. Plaintiff first argued that he could not authorize the release of Allegheny County records, medical or otherwise, because of the terms of a settlement agreement arising from litigation with the Allegheny County jail. However, since counsel for Lasky and Young was also involved in the Allegheny County jail litigation, he was aware that there was nothing that prevented Plaintiff from executing an authorization. When counsel confronted Plaintiff, Plaintiff agreed to sign the execution. In addition, Plaintiff altered an authorization directed to the Allegheny County jail health care provider and attempted to influence the medical records that were released.

Defendants state that "[d]ue to Plaintiff's misconduct, lack of candor and deceit, defendants seek sanctions in the form of dismissal of this case with prejudice. In the alternative, defendants request this

Court to order Plaintiff to appear for his deposition on a date certain or suffer dismissal of his action with prejudice." (Doc. 63-1, p. 10). Counsel also requests, without regard to which of the above options the Court chooses to impose, to be awarded counsel fees and travel expenses associated with the May 19, 2005 deposition in the amount of $2,310.93.

II.  Discussion.

Federal Rule of Civil Procedure 37(d) states: if a party . . . fails to appear before the officer who is to take the deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. FED. R. CIV. P. 37(d). Although Rule 37(d) allows a court to make such orders "as are just," it specifically references the sanctions outlined in Rule 37(b)(2). That rule permits a court to issue an order "dismissing the action" as a sanction for discovery abuse or failure to comply with a court order. See Fed. R. Civ. P. 37(b)(2)(C).  The Third Circuit set forth the following six factors a court must balance when determining whether to dismiss an action as a sanction for discovery abuse:  (1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and 6) the meritoriousness of the claim or defense. See Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867-68 (3d Cir. 1984). In deciding whether to dismiss the action under Poulis, the court is required to engage in a balancing of the factors in the "context of the district court's extended contact with the litigant." Id.

Given the above recitation of the background, the Court finds that dismissal of the action as a

5

sanction for Plaintiff's conduct is too harsh. Rather, the Court agrees with Plaintiff's counsel's assessment that "[i]t is undisputed that plaintiff has not cooperated fully with discovery. However, he has not demonstrated such bad faith or failure to cooperate at this time so as to make dismissal of his action with prejudice appropriate." (Doc. 66, p. 2). Nor is the Court convinced that an award of monetary sanctions is appropriate. Plaintiff represents that he did not receive timely notice of the May 19, 2005, deposition. There is nothing in the record that disputes this representation. Consequently, the Court will direct Plaintiff to appear for his scheduled deposition. He is cautioned that his failure to appear will result in dismissal of the action without any further notice from the Court.

III. Order.

**AND NOW**, this 22nd day of November 2005, upon consideration of Defendants' joint motion for sanctions (Doc. 63), **IT IS HEREBY ORDERED THAT**:

1. Defendants' motion is **GRANTED** inasmuch as Plaintiff will be required to appear for his deposition on a date certain or suffer dismissal of his action with prejudice.

2. Counsel shall agree upon a mutually convenient date to conduct the deposition. The deposition shall take place **on or before December 22, 2005**.

3. Counsel shall **NOTIFY** the Court, **on or before November 28, 2005**, of the date of the deposition so that an order compelling Plaintiff's attendance at the deposition can be issued.

4. The motion is **DENIED** in all other respects.

                        S/ Yvette Kane
                        Yvette Kane
                        United States District Judge