**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS N. MASTERS,** | : | **CIVIL NO. 1:CV-03-0748** |
| **Plaintiff,** | : | |
| | : | **(Judge Kane)** |
| v. | : | |
| | : | |
| **OFFICER WALTER BRITTON,** | : | |
| **ET AL.,** | : | |
| **Defendants** | : | |

**MEMORANDUM AND ORDER**

Presently ripe for disposition is defendants' renewed motion for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure.[1] (Doc. 75). For the reasons set forth below, the motion will be granted and plaintff's action will be dismissed with prejudice.

**I. Factual and Procedural History.**[2]

This civil rights action, wherein plaintiff alleges that his rights were violated while incarcerated at the State Correctional Institutions at Pittsburgh and Camp Hill, was commenced on behalf of plaintiff by attorney Eric Yurkovich in May 2003. The complaint was amended in March 2004. Following the disposition of a Rule 12 motion, a scheduling order was issued setting pretrial deadlines. Within two months of the entry of the scheduling order, a motion to compel answers to interrogatories and responses to a request for production of documents was filed by counsel for defendants Lasky and Young. Defendant Noel also filed a motion to compel answers to interrogatories and responses to a request for

---

[1] Defendants filed a joint motion for sanctions on June 14, 2005. By Memorandum and Order dated November 22, 2005, the motion was denied. (Doc. 68). At that time, plaintiff was directed to appear for a scheduled deposition. He was also "cautioned that his failure to appear will result in dismissal of the action without any further notice from the Court." (Doc. 68, p. 6).

[2] Although defendants move for dismissal based on plaintiff's conduct since the date of the Memorandum and Order denying sanctions (Doc. 68), the background set forth encompasses the totality of events.

production of documents. Subsequent to Lasky and Young's motion, but prior to Noel's motion, plaintiff's counsel moved to withdraw his appearance. His request was granted and new counsel, Mr. Russell, entered his appearance. Lasky and Young's motion to compel was granted as unopposed and counsel was instructed to provide defendants with the requested documents and information. Noel's motion was denied without prejudice. While plaintiff provided the required documentation, defendants challenged the veracity of the answers provided in response to a number of interrogatories.

Defendants also indicated that plaintiff commenced two other lawsuits complaining of the same injuries of which he complains in this matter. Specifically, in litigation arising out of his incarceration at the Allegheny County Jail ("Jail litigation"), plaintiff claimed that as a result of a fall on July 7, 2000, almost a year before the fall that occurred in the instant lawsuit, he sustained severe injuries to his head, knee and back resulting in chronic pain, hearing loss and partial loss of vision. Notably, he alleges in this litigation that his fall at SCI-Pittsburgh was due to the injuries he sustained in his first fall at the Allegheny County Jail. Plaintiff, however, neglected to reveal that he was involved in other litigation that was filed prior to this matter. Plaintiff allegedly fell in an elevator located in the Monroeville Mall ("Elevator litigation") shortly after he was released from SCI Camp Hill and he filed a lawsuit seeking compensation for a variety of injuries, including chronic back pain, loss of vision and loss of hearing. Plaintiff testified, under oath, in the elevator litigation that prior to the fall, he was in good health and that he was lifting weights the night before the fall. This was several months after his fall at SCI Pittsburgh, and shortly after he was allegedly assaulted in SCI Camp Hill. Additionally, plaintiff testified in the elevator litigation that since the fall, he was required to use a four-pronged cane or walker due to several other falls caused by vertigo. Significantly, in response to an interrogatory propounded upon plaintiff in the present litigation, he represented that he had not been involved in any other fall,

incident or accident in the last ten years.

In their first motion for sanctions, defendants stated that "[b]ased upon the inconsistent and often conflicting information revealed in these three lawsuits, as well as a wealth of other information which defendants have gathered, defendants have reason to believe that Plaintiff has concealed significant information and provided false or misleading information about a number of other matters as well." (Doc. 63-1, p. 6). Defendants further state that "[i]n order to confirm these suspicions and fully prepare for their defense, defendants have been attempting to take the [plaintiff's] deposition for a number of months." (Id.).

Plaintiff's first deposition was scheduled for February 15, 2005. However, upon notification from Mr. Russell that he was considering withdrawing from the case, the deposition was postponed. The deposition, which was subsequently scheduled for March 3, 2005, took place as planned since Russell did not file a motion to withdraw. After several hours, plaintiff was unable to continue with the deposition due to his medical condition. The deposition was therefore continued until March 17, 2005. Both plaintiff and his counsel appeared on March 17, 2005, but plaintiff refused to go forward because his attorney had filed a motion to withdraw that had not yet been ruled upon by the court. The motion to withdraw was subsequently denied. The deposition was rescheduled to May 19 and May 20, 2005. On May 16, 2005, plaintiff's counsel confirmed that the deposition was going forward. At 8:00 p.m. on May 18, 2005, an individual, who identified himself as plaintiff's son, left a message on the answering machine of defense counsel's firm indicating that plaintiff had just received notice of the deposition and would not be attending. Plaintiff failed to appear for the May 19, 2005 deposition.

Due to plaintiff's failure to cooperate in the prosecution of the litigation, it was necessary for the court to become involved in the discovery process. Initially, a conference was scheduled to discuss the

difficulties defendants were having in conducting discovery and in completing plaintiff's deposition. Plaintiff failed to appear at his attorney's office, and his attorney was unable to contact him prior to the conference to discuss the matter. The case was therefore unable to proceed. An order was issued scheduling a conference "to further discuss the Plaintiff's failure to cooperate with discovery and participate in the prosecution of the litigation." (Doc. 61). Plaintiff's participation in the conference was made mandatory. He was present at his attorney's office at the assigned time, and the conference went forward. He was admonished by the court for his behavior and was advised that his failure to cooperate in the litigation would result in dismissal of the action. It was agreed that due to plaintiff's conduct, a motion for sanctions would be entertained by the Court. Defendants filed their motion for sanctions, but plaintiff failed to file an opposition brief. The court ordered an opposition brief to be filed, or suffer dismissal of the action. An opposition brief was then filed.

In their motion, defendants detailed the difficulties they faced in securing authorization for medical records. Counsel for Lasky and Young sent four separate letters requesting that plaintiff execute authorizations. Plaintiff first argued that he could not authorize the release of Allegheny County records, medical or otherwise, because of the terms of a settlement agreement arising from litigation with the Allegheny County jail. However, since Lasky and Young's attorney was also involved in the Allegheny County jail litigation, he was aware that there was nothing that prevented plaintiff from executing an authorization. When confronted by counsel, plaintiff agreed to sign the execution. He also altered an authorization directed to the Allegheny County jail health care provider and attempted to influence the medical records that were released.

Defendants stated that "[d]ue to Plaintiff's misconduct, lack of candor and deceit, defendants seek sanctions in the form of dismissal of this case with prejudice. In the alternative, defendants request

this Court to order Plaintiff to appear for his deposition on a date certain or suffer dismissal of his action with prejudice." (Doc. 63-1, p. 10). At that time, it was concluded that dismissal of the action as a sanction was too harsh. Although it was undisputed that plaintiff had not cooperated fully with discovery, he had not demonstrated such bad faith or failure to cooperate so as to make dismissal of the action with prejudice appropriate. Plaintiff was compelled to attend his deposition on December 20, 2005. (Doc. 69).

On December 20, 2005, while all parties were convened for the deposition, because plaintiff had sued his counsel for malpractice, counsel orally sought permission from the court to withdraw. (Doc. 71). Since there were no objections to counsel's request, he was permitted to withdraw. However, plaintiff was informed that he was expected to go forward with the deposition without the benefit of counsel. He was further informed that in the event of his failure to cooperate during the deposition, the court would entertain a motion to dismiss the action. (Id.). Plaintiff indicated that he understood. Less than two hours into the deposition, plaintiff represented that he was unable to continue and the deposition ceased. (Doc. 75-1, p. 2, ¶ ).

Upon request of counsel, the court subsequently issued an order compelling plaintiff to appear for depositions on January 17 and January 18, 2006. (Doc. 74). According to defendants, plaintiff appeared on January 17, but, during an 11:30 a.m. break, he left the deposition and did not return. The following day, plaintiff informed defendants that the deposition would have to conclude by 1:00 p.m. because he needed to go to the Pittsburgh airport to meet a paralegal for the New York attorney who was going to represent him. At 11:30 a.m., plaintiff left, stating that he was physically and emotionally unable to continue. Further, he was unable to agree to a date to continue the deposition. (Doc. 75-2, p. 33).

During these two days, plaintiff engaged in the following conduct:

> Plaintiff refused to answer questions about a prior lawsuit in which he claimed to have sustained the same or similar injuries to those which he is claiming in the instant lawsuit; refused to provide the correct spelling and addresses of his medical care providers; refused to provide his address; refused to provide the names and addresses of witnesses whom he identified as possessing information relevant to this case; and refused to sign authorizations for records of health care providers who allegedly have treated him for the injuries sustained in the underlying incidents.

(Doc. 75-1, p. 4, Doc. 75-2, pp. 3-6, 8-9, 13, 16-17, 19, 22, 27). In addition, he refused to answer a number of questions because he was not represented by counsel. (Doc. 75-2, pp.4, 9, 11, 13)

Based on the above, defendants then renewed their motion for sanctions. (Doc. 75).

## II. Discussion

Federal Rule of Civil Procedure 37(d) states: if a party . . . fails to appear before the officer who is to take the deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. FED. R. CIV. P. 37(d). Although Rule 37(d) allows a court to make such orders "as are just," it specifically references the sanctions outlined in Rule 37(b)(2). That rule permits a court to issue an order "dismissing the action" as a sanction for discovery abuse or failure to comply with a court order. See Fed. R. Civ. P. 37(b)(2)(C). The Third Circuit set forth the following six factors a court must balance when determining whether to dismiss an action as a sanction for discovery abuse: (1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and 6) the meritoriousness of the claim or defense. See Poulis v.

State Farm Fire & Cas. Co., 747 F.2d 863, 867-69 (3d Cir. 1984). In deciding whether to dismiss the action under Poulis, the court is required to engage in a balancing of the factors in the "context of the district court's extended contact with the litigant." Id.

Defendants argue that plaintiff has engaged in a series of tactics designed to postpone, forestall or otherwise delay his deposition. (Doc. 75, p. 3). Further, plaintiff's latest conduct represents a continuing pattern of discovery abuse which has caused them to incur significant legal fees and expenses. They "have sustained and will continue to sustain substantial prejudice as they are unable to fully investigate plaintiff's claims and adequately prepare for their defense." (Doc. 75, p. 5).

In opposition, plaintiff claims that his physical and mental restrictions prevent him from participating in the deposition process for a lengthy period of time. He states that in the nine (9) hours of deposition testimony conducted to date, defendants have questioned him about issues that are unrelated to the litigation and are unnecessarily prolonging the process. He further requests that the court defer any disposition of the motion for sanctions until after February 13, 2006, to enable him to secure "interested counsel," and that the court defer any further deposition until counsel has the opportunity to review the volumes of litigation material. (Doc. 76-1, pp. 5-6).

The above recitation of facts details a number of discovery abuses committed by plaintiff. The first time this issue was presented, the court gave plaintiff the benefit of the doubt and afforded him the opportunity to cooperate with discovery and to continue to prosecute the litigation. (See Doc. 68). However, given the blatant disregard for court orders, refusal to cooperate, and combative behavior that plaintiff has exhibited since that time, the court concludes that dismissal of the action is appropriate.

Plaintiff was aware of orders of court and is personally responsible for failing to complete the deposition. See Poulis, 747 F.2d at 868 (identifying "extent of the party's personal responsibility" as

first factor). In addition, in recent correspondence to defendants' counsel, plaintiff, who has apparently relocated to Florida, states that "I will not be returning to Pittsburgh, as after completing all the necessary surgeries to repair those injuries caused directly by the acts of those you represent, I am planning for once again a productive life here." (Doc. 84, p. 1). Given plaintiff's relocation, and his representation that he will not be returning to Pittsburgh, it would seem that he has no intention of completing the deposition.

Unquestionably, plaintiff's conduct has prejudiced defendants by requiring them to assume the cost of continued preparation for trial without the benefit of plaintiff's completed deposition, access to plaintiff's medical records, or the names of certain witnesses and treating physicians. See id. (identifying "[p]rejudice to the adversary" as second factor). Review of the portions of the deposition transcript from January 17 and 18 reveals that defendants' efforts to obtain information were continuously thwarted by plaintiff. He repeatedly interrupted counsel during questioning, and was completely uncooperative in that he refused to provide documentation, refused to execute medical authorizations, refused to provide the names of witnesses, refused to provide the names and addresses of physicians and treatment facilities, refused to provide an address, other than a post office address, and refused to identify probable counsel. Given this conduct, it is disingenuous for plaintiff to accuse defendants of unnecessarily prolonging the deposition process.

Plaintif's failure to complete his deposition over the course of more than one year constitutes a history of dilatoriness. See Poulis, 747 F.2d at 868 (identifying "history of dilatoriness" as third factor). His failure to comply with orders of court concerning his deposition, when previously advised by the court that his conduct may result in dismissal of the above-captioned case (Docs. 68-71, 74), constitutes willful disregard of the court's authority. See id. at 868-69 (identifying "willful" or "bad

faith" conduct as fourth factor).

With regard to alternative sanctions, admission of certain facts or evidence or assessment of costs against plaintiff would be ineffective to deter plaintiff's conduct because he has already been forewarned that his failure to cooperate would result in dismissal of the action. See id. at 869 (identifying availability of "[a]lternative sanctions" to dismissal as fifth factor). Further, plaintiff's suggestion that the disposition of his action be deferred until he is able to secure counsel is not viable. Plaintiff has fired his two prior attorneys and, as of this date, he has not secured counsel, despite his numerous representations that counsel was "interested."

In balancing the above factors in the context of this court's extended contact with the plainitff, the court concludes that dismissal of the action with prejudice is warranted.

## III.  Order

**AND NOW**, this 15th day of June 2006, upon consideration of defendants' renewed motion for sanctions (Doc. 75), and in accordance with the above, **IT IS HEREBY ORDERED THAT**:

1. Defendants' renewed motion for sanctions (Doc. 75) is GRANTED.

2. The above captioned action is DISMISSED WITH PREJUDICE pursuant to FED.R.CIV.P. 37(b)(2)(C) (permitting a court to issue an order "dismissing the action" as a sanction for discovery abuse or failure to comply with a court order); see also Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867-69 (3d Cir. 1984).

3. The Clerk of Court is directed to TERMINATE any and all pending motions. (Docs. 75, 78, 81,  82).

4. The Clerk of Court is further directed to CLOSE this case.

        S/ Yvette Kane
        Yvette Kane
        United States District Judge